ALBANY,
August, 1805.

Penny & Scribner.
v.
New-York Insurance Company.

## Samuel Penny and Joel Scribner *against* the New-York Insurance Company.

ASSUMPSIT on a policy of insurance on a cargo valued at 4,000 dollars. The vessel was chartered to the plaintiffs for the voyage insured, at 400 dollars *per* month. The day after her homeward lading was taken in, an embargo was laid on, that continued two months and six days, at the expiration of which time it was taken off, and the vessel sailed on her voyage home. Whilst thus on her re-

The charterer of a ship, at so much *per* month, cannot on an insurance on his cargo, recover the *extra* sum paid during an embargo; such ex-

Penny & Scribner v. New-York Insurance Company.

penditure not being the subject of a general average, and not covered by any words in the policy.

turn, the assured, having received notice of the imposition, but not of the removal of the embargo, made their abandonment, which was not accepted, and shortly after, the vessel safely arrived. The plaintiffs originally claimed for a total loss, according to the valuation in their policy, and also 1,600 dollars for four months hire of the vessel from the period of her first commencing to load, during her detention under the embargo, and until the final delivery of her loading in New-York. On the principle of these demands, an account was stated between the parties, and a verdict taken in favor of the plaintiffs for the balance, subject to the opinion of the court, whether it should stand, be reduced to any other sum, or entered for the defendants. The plaintiffs however, being, previous to the argument, informed of the decision of the Court of Errors in the case of *Church* v. *Bedient* and others,* relinquished the idea of receiving for a total loss; yet they contended they were entitled to compensation to the amount of the money paid under the charter party during the existence of the embargo.

* 1 *Caines's Ca. in Error,* 21.

*Colden* for the plaintiffs. We certainly are authorised to demand from the underwriters a compensation to the amount of the money paid for the hire of the vessel whilst embargoed. This is a damage within the words of the policy. We are to be kept indemnified from any loss by reason of restraints, or detentions. The detention was at a critical time; when ready to sail. That therefore an injury has been sustained, cannot be disputed. It cannot be borne by the insurer on the ship; nor by him on the freight. Must it not then fall on the underwriter on the cargo? for it was to bring home the cargo that it was incurred. It may be said that the property is not injured. But that is not the criterion. If the assured has been damnified, it is enough to entitle him to ask for reparation. In the case of ransom, the property is not deteriorated, yet the underwriter is liable. No objection can be made as to the nature of the claim, because an account is annexed to the case, for the express purpose of having it modelled as the court may think fit, and under a count for a total loss, a partial one may be recovered.

ALBANY,
August, 1805.

Penny & Scrib-
ner v.
New-York In-
surance Com-
pany.

*Hoffman* in reply. This is an attempt to charge the un-derwriter on the cargo, with expenses due on the freight. It is no argument to say, because it is not to be exclusively borne by ship or freight, it must therefore be thrown on the cargo. The first claim was for a total loss. Finding this could not be supported, they come now, and ask the court to make *that* a ground for a partial loss which can, at most, be only a subject of general average. To adjust this the court have no *data*, and must step out of the poli-cy, the pleadings, and the case. No particular interest can be charged with the expenses of detention. A doubt may be entertained how far those incurred in the present in-stance, are even a subject of general average. The whole results into this ; the party has, under his contract, paid some hundred dollars more in one case, than he would in another.

*Harrison* in reply. The expenses incurred by detention, have been usually considered as charges against the freight, where not subjects of general average. This, however, is a case *sui generis*, distinguishable from all to be found in the books. Where the freight is liable exclusively, a spe-cific sum is to be paid for the carriage of the articles, and whether they arrive soon or late, is immaterial to the own-er of the goods, for he has nothing more to pay than his freight. When therefore he applies to the underwriter, the answer is you are not the sufferer ; the freight has paid it. This does not apply here. Under this charter party, the owner of the goods is the sufferer by the detention, for he pays so much more in money, as the vessel was detained in time. This then is a loss on the cargo. The case, it is true, is novel. But considering a policy of insurance as a contract of indemnity, the plaintiff must, on the principles established as law, be entitled to compensation. Suppos-ing however, this is matter of general average, there are *data* to shew something due, and then a new trial may be directed to ascertain how much.

*Per curiam*, delivered by LIVINGSTON, J. The subject insured not being abandoned until it was in safety, that is, until three days after the embargo was removed, the *plain-tiffs*, although ignorant of its liberation, cannot, consistently with the judgment of the court for the correction of errors

ALBANY,
August, 1805.

Penny & Scribner v.
New-York Insurance Company.

in *Bedient & Kimberly* v. *Church*, recover as for a total loss; nor can we, on the facts here disclosed, ascertain what is due to them for a partial loss, admitting a demand of that kind to be well founded. If entitled to any thing, it is to the *defendants'* proportion of a general contribution towards reimbursing them for a sum, which as owners of the cargo, they paid in consequence of certain extraordinary expenses that accrued during the embargo; but to make a calculation, we should know the value of sloop, freight and cargo. This not appearing, it is impossible so to modify the verdict as to do complete justice. If this cannot be done, it is said, that as this suit was brought in consequence of a former judgment rendered by this court, which has since been reversed, the parties should be permitted to go to a new trial, to ascertain the value of these different subjects, and the extent of the *defendants'* liability on the principle of a general contribution. This is reasonable, and I should readily accede to it, were the *defendants* chargeable with any thing on this policy; but thinking otherwise, it is our duty to arrest the suit here, and not expose them to the expense of further litigation. It seems to have been conceded on the argument, that the *plaintiffs*, having contracted for freight *by the month*, were bound to pay even for the time the vessel was embargoed. This may be so, but I am inclined to think, that a detention of this kind, by a foreign prince, suspends the contract, whether freight be payable for the whole voyage, or by the month. Demurrage is certainly not payable during such restraints, and *Pothier*, in his treatise on charter-parties, says expressly, that " The owner of a vessel hired *by the " month*, is not entitled to freight during an embargo." Without, however, deciding a point, which has not been made, and admitting the sum thus paid, to have been justly due, the *defendants* cannot be called on to refund any part of it. This will necessarily lead to an enquiry, whether the expenses arising out of a state of embargo, are to be defrayed by common contribution, or whether they be subjects of a particular average. That they are of the latter description, has been decided, after solemn argument, by the whole court of *King's Bench*, in the case of *Robertson* v. *Ewer*, where it was held, that wages and provisions during an embargo, were not covered by a policy on the ship. This

*N. 85. Tom. 2. p. 399.*

*1 D. & E. 127.*

may be supposed inconsistent with our own decision in the case of *Leavenworth* v. *Delafield*, and therefore, as not forming a rule in the present case. But the two decisions are perfectly reconcilable; otherwise, for the sake of uniformity, the latter should be followed, unless manifestly incorrect, however respectable the other may be. There is an evident distinction between a detention by capture and an embargo. In the former case, the charter-party is dissolved, and the captain (who is generally agent of all parties, to act for the best under every misfortune) reclaims both vessel and cargo, and, without being under contract, or obliged so to do, retains the crew, for the purpose of preventing an *entire* loss, and pursuing the voyage if the property be acquitted ; whereas he might dismiss them at once, and the underwriter be called on for a total loss. The expenses, therefore, incurred by a claim of this nature, being evidently for the general benefit, if not impliedly at the general request, and not the effect of previous stipulation or contract, which is at an end by the capture, it is but reasonable they should be defrayed in the same way. *Ricard*, in his treatise on the commerce of *Amsterdam*, assigns nearly the same reason for making a general average of wages in case of capture, and a particular average of them during an embargo. " The " wages of a ship," says he, " detained by an order of state, " shall not be brought into general average as in case of " capture ; because, in the latter case, the crew remain to " take care of the vessel whilst she is *reclaiming*, and these " charges are occasioned with the *sole* view of preserving " the ship and cargo for the proprietors ; but there is no " room for sush pretence in the case of an embargo, as the " sovereign who lays it, neither claims the ship or cargo, " but only for political reasons prevents their immediate de- " parture. Therefore it cannot be said, that the ship's com- " pany remained on board to prevent an entire loss." The *French* ordinance declares, that such charges, during an embargo, shall be reputed as general average, if the vessel be hired by the month, but if freighted by the voyage, they shall be borne by her alone. *Pothier*, in his treatise above referred to, assigns a reason for this distinction, which is not very satisfactory, and therefore I shall not repeat it. From *Emerigon*, we also learn, that there are foreign wri-

ALBANY, August, 1805.

Penny & Scribner v. New-York Insurance Company.

1 N. Y. T. R. p. 573.

p. 279.

1 Vol. 631.

ALBANY,
August, 1805.

ters, although there be a diversity of opinion among them, who hold all expenses consequential on an embargo, as particular averages. In this way, a person who has insured one species of property, can never be called on to make good a particular damage which may have happened to another, nor exposed to a loss not within the risk which he has assumed. On what pretence then, can an owner of a cargo call on its underwriter, to make good any *extra* freight he may have paid for the carriage of it? He does not undertake that the voyage shall be short or uninterrupted, but only that the goods shall eventually arrive safe; and whether the transportation cost more or less, is a matter with which he has nothing to do. Whether the vessel encounter a tempest, or be embargoed in her way (if no abandonment be made during the detention) is to him of no consequence, so that the goods finally arrive, as was the case here, without damage, at their destined port. I am therefore for adopting the *English* rule in the case of an embargo, not on the ground of authority, the decision being posterior to the revolution, but as the most reasonable; the most conformable to the understanding of the different classes of underwriters; the best calculated to prevent confusion and embarrassment, and the most likely to throw upon each the loss which the particular subject insured by him, has sustained. Whether, therefore, the present plaintiffs were liable for freight or not, during the embargo, my opinion is, that they have no claim on the defendants, who underwrote their goods, for any part of it, and that judgment be rendered accordingly.