## Case No. 6,922.

HURRY v. HURRY'S ASSIGNEES et al.

[2 Wash. C. C. 145.] [2]

Circuit Court, D. Pennsylvania. April Term, 1808.

MARITIME LIEN — CONTRACT IN NATURE OF BOTTOMRY—CHARTER PARTY—POWER OF MASTER.

1. Where a bond has been given in the nature of a bottomry, but the circumstances under which it was executed were not such as to warrant the captain in executing a maritime hypothecation, yet, the captain having had a power of attorney from the owner of the vessel, to borrow money upon the vessel, such a contract, if made

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

by the captain, may create a lien on the vessel, in a court of common law.

[Cited in Greely v. Smith, Case No. 5,750; Furniss v. The Magoun, Id. 5,163.]

[Cited in Dunning v. Merchants' Mut. Marine Ins. Co., 57 Me. 112; Warren v. Skolfield, 104 Mass. 506.]

2. The master of a vessel has no power to enter into a charter party in a foreign port, for the purpose of giving the creditor of the owner of the vessel a security for the debt due to him.

3. Where the owners of a vessel have no agent in a foreign port, the master has the power to make a charter party.

[Cited in The Director, 26 Fed. 709.]

Action [by Nicholas Hurry against the assignees of Samuel Hurry and G. W. Lawerswiller] for money had and received. The parties entered into the following agreement, which is filed: "The defendants admit the receipt of the proceeds of the John and Alice, and of the freights of said vessel, under charter party; but these admissions to have no other effect, than to entitle the parties to bring forward, in this form of action, the following questions: First, whether the plaintiff is entitled to the whole, or to any, and what part of the proceeds of the sale of said ship; and, second, whether he is entitled to the whole, or to any, and what part, of the freight arising under the charter party?" The plaintiffs, having failed in the libel which they filed against the John and Alice, in order to subject her to the bottomry bond executed by Whitesides [Case No. 6,-923] brought this action to recover the balance of the proceeds of the said ship, which was sold to pay sailors' wages; and the balance, together with the freight earned by her on her last voyage from Liverpool to Philadelphia; which were paid into the hands of the clerk of this court, to await the event of this cause. In addition to the facts stated in the admiralty case, and as explanatory of some of them, it appears, that at the time when the last bottomry bond was given, (the amount of which is sought to be recovered in this action, viz. £1963, 2s. sterling,) Captain Whitesides executed a charter party to the plaintiff, of the ship from Liverpool to Philadelphia, for five hundred pounds sterling; and the freight received by the agent of the plaintiff in Philadelphia, was upwards of seven hundred pounds sterling; which that agent holds, as a stakeholder, between the parties. The power of attorney given by said Hurry to Whitesides on the 28th of May, 1802, previous to his first voyage, empowered him to act concerning the vessel and her freights and to take up and borrow any sum or sums of money, on the same, and to execute bottomry, or hypothecation bonds, on her and her freights; and to execute any other act or deed, for securing payments of such moneys so borrowed. It appears in evidence, that the greatest part of the moneys advanced by the plaintiff, was for the disbursements and outfits of the ship on her different voyages; and that the residue was on account of Samuel Hurry, for premiums of insurances of the ship, commissions, and for purposes of a similar nature. The bottomry bonds were executed by Whitesides in his own name; and the moneys, though not paid into his hands, were yet paid and disbursed by the plaintiffs, on account of the ship owners; and they were so advanced on the ground of Whitesides' authority to borrow.

Chauncey & Hare, for defendants, opposed the claim upon the following grounds: First, that as master, Whitesides had no power to give a bottomry bond for securing the advances made by the plaintiffs, on the principles stated by this court in the libel case; as part owner of the ship, he had not the power of a general partner, to bind the interest of the other part owner by deed. (This was admitted by Mr. Dallas, for plaintiff.) Neither could he bind Samuel Hurry by virtue of the power of attorney: First, because it is executed in his own name, and not in the name of his constituent, reciting his authority. Abb. Shipp. 441; 3 Lev. 140. Second, because if properly executed, the power did not authorize him to take up money, except on bottomry, and of course he could not borrow, except in a case where a good maritime bottomry bond could be given; which this court has decided could not have been given in this case: particularly, he could not give such a bond for securing previous advances, as was done in this case. Third, the power was executed when the first loan was made. and was then functus officio. They contended, that the captain had no power to charter the vessel. Abb. Shipp. 86, 146. Of course, the plaintiff had no right to any part of the freight; but, at all events, he had no right to more than what was received over the five hundred pounds, which he was bound to pay, by the charter party. Upon the merits of the case, they produced an account furnished by the plaintiff, in which all the advances for the John and Alice, for which the bottomry bond was taken, are charged, and then carried to the general account of Samuel Hurry; against whom the balance is brought down to twenty-one pounds some shillings, and this is carried to the account of Hurry and Lawerswiller.

WASHINGTON, Circuit Justice (charging jury). It has been truly stated by the defendants' counsel, and admitted by those of the plaintiff, that the advances made by the plaintiff were not such, nor were they made under such circumstances, as authorized the master to execute a bottomry bond for securing their payment. The only ground upon which it can be supported, is the power of attorney, provided it authorized the acts of the master in this case; if it did, though not good, as a maritime bottomry bond, it may create a lien on the vessel. By this power, the mas-

ter was authorized to borrow any sum or sums of money, and to secure their payment by bottomry or hypothecation bonds on the vessel and freight, or in any other way. This power, certainly, does not confine the authority to cases where a maritime hypothecation only could be given. First, because the words are general as to the power of borrowing, and the nature of the security to be given; and secondly, because if such had been the meaning, the power was unnecessary, since the master possessed it under his general authority of master. But, at the same time, the account stating the items of the sum lent must be examined, and no sums can be allowed, but what are to be considered strictly as money lent and advanced by the plaintiff, either by delivering them to the captain, or laid out by the plaintiff for the use of the vessel, as to which there is no difference. As an instance of the sums not to be allowed, are such as the plaintiff, as agent or consignee of Hurry and Lawerswiller, or of the ship owners, had paid for premiums of insurance on the vessel and cargo, commissions charged, and the like. Nor is it of any consequence, whether these loans or disbursements were made on the first, second, or third voyage; because, though there is a maritime hypothecation, the bottomry bond would not be good, merely to secure antecedent advances; yet, the power in this case being general, and unlimited as to time, and having never been revoked, it was competent to the master to give security on his last voyage, for loans made then, and on former voyages, under the power. It is true that the bottomry bond, not having been executed in the name of Hurry, could not be a foundation on which a suit could be maintained against him. But this action is brought for the sums lent; and the hypothecation bond is evidence, that a security on the vessel was given for such loans, so as to give to the plaintiff a lien on the vessel or her proceeds.

As to the freight, it has been said by the plaintiff's counsel in argument, that the charter party was given by the captain, to secure so much of the debt due from Hurry and Lawerswiller; but no evidence of this has been given. If there had been, only the captain's part could be bound, because he certainly had no authority, merely as master, or under the power of attorney, to enter into such an engagement. But under his general authority, he had a right to charter the vessel, the owners having no agent at Liverpool. The consequence of that is, that the defendants are entitled to receive five hundred pounds sterling, of the money earned by the vessel, and in the hands of the defendants' agent; and the plaintiff, on this account, is only entitled to the residue of the freight.

As to the question, whether the disbursements for which the bottomry bond has been given, have been discharged by the ad-

missions of the plaintiff, in the accounts he has furnished, you are or will be the proper judges, after you have examined the accounts. If these sums are charged in that account, and credited to the amount of the debit, this would certainly be a discharge.

The jury found for the plaintiff, only the difference between the five hundred pounds freight, and the amount actually made by the vessel; and nothing on account of the bottomry bond.

---

## Case No. 6,923.

HURRY v. The JOHN & ALICE.

[1 Wash. C. C. 293.] [1]

Circuit Court, D. Pennsylvania. April Term, 1805.

MARITIME LIEN—POWER OF MASTER—HYPOTHECATION—CHARACTER OF—CHARTER-PARTY.

1. An instrument, claimed to be an hypothecation of a vessel, is not such, if it was given to the consignee, when he had funds in his hands to secure the advances made by him for the vessel.

2. A consignee, under such circumstances, cannot enter into a maritime contract with the master of the vessel, so as to bind him to pay marine interest.

3. The cargo and freight is subject to the payment of extraordinary demands, for completing the voyage; and the consignee takes these funds cum onere, and under an implied engagement to make the necessary advances.

4. The master, being also owner of the vessel, may give a specific lien on her, for securing advances made for any purpose; but if this is not given by virtue of his authority as master, it will not be a marine hypothecation.