## MUMFORD *against* THE COMMERCIAL INSURANCE COMPANY.

Where goods insured were captured during the voyage, and the vessel was released, but the goods detained for further proof, and were, afterwards, restored, on payment of the full freight; but the owner was obliged to hire another vessel to carry the goods to their place of destination; it was held that the insurer was liable to pay this additional, or increased freight, being an expense necessarily incurred in consequence of the capture.

THIS was an insurance on *goods*, from *Amsterdam* to *New-York;* and a verdict was taken for the plaintiff by consent, for 151 dollars and 45 cents, subject to the opinion of the court on the following case :

On the 31st *May*, 1805, 32 bales of merchandise, of the value of 2,134 dollars, were shipped at *Amsterdam*, on board the ship *Ocean*, for *New-York*, for the plaintiff. The goods belonged to the plaintiff, and were duly documented. The ship during the voyage, on the 1st of *September*, 1808, was met by a *British* ship, and sent to *Halifax*. The ship and the goods were libelled in the admiralty court there. The ship was acquitted on the 20th *November*, 1805, and restored ; but the goods of the plaintiff were detained for further proof. The master of the ship made a tender of the ship to bring on the goods ; but being so detained, they could not be sent. The ship sailed without the goods, and arrived at *New-York*. The agent of the ship interposed a claim for full freight of the goods; and they were released in

*May*, 1806, and restored, on *condition* of paying a proportional part of the costs of the libel; and of paying to the ship-owner, the full freight from *Amsterdam* to *New-York*, as stipulated in the bill of lading. The costs and freight were paid before the delivery of the goods to the plaintiff. The goods were brought to *New-York* in another ship, under a charge of 141 dollars and 55 cents, for additional freight. The plaintiff did not abandon to the defendants, but claimed a reimbursement for the payment of the proportional part of the expenses of the libel, and of the freight from *Halifax* to *New-York.* The defendants paid the expenses, but refused to pay the freight; and to recover it, the present suit was brought. The plaintiff claimed the freight, as a charge or expense incurred by reason of the capture and detention of the goods insured; and as so much paid under the clause allowing the assured to *labour*, &c. for the safety of the property.

It was agreed that the policy was in the usual form, and that the ship *Ocean* was a general ship, and had on board other goods besides those of the plaintiff.

*S. Jones*, jun. for the plaintiff. The question is, whether the insurers are bound to pay for the transportation of the goods to the place of delivery under the circumstances of this case. Where a disaster happens by one of the perils in the policy, the insurer is obliged to indemnify the insured for all the loss, damage and expense consequent to such accident. As in case of capture, when the vessel is released, after a trial, the insurers must pay all the costs attending the trial.

Where a change of ship becomes necessary, and for the interest of all concerned, the insurers must pay the expense of salvage, unloading, warehousing, reloading, and the duties that may have been paid, and also the increase of freight, if any.* Here was, in fact, a change of ship rendered necessary, in consequence of one of

* *Marshall*, 2d ed. 171. *Emerig.* tom. 1. 532. 376. 681.

ALBANY,
Feb. 1810.

MUMFORD
v.
COM. INS. CO.

the perils of the voyage. The ship being released, and the goods detained, it became necessary to procure another vessel, after the goods were released, to carry them to their port of destination. Full freight was decreed to be paid ·t the port into which the vessel was carried by the captors. The subsequent expense of transportation from *Halifax* to *New-York*, was an *extra* charge, requisite for the safe delivery of the goods at their destined port ; and like lighterage, and other necessary and incidental charges, must be paid by the insurers.

The goods did not arrive in safety any more than if the vessel had been stranded ; and the charges of transportation in this case were necessary to save the goods, and are altogether distinct from the original freight.

If the goods are restored before the insured hears of the capture, he cannot abandon, but must hire another vessel to carry the goods to the port of delivery ; for it becomes the duty of the master, as agent of all concerned, to take care of the goods after they are released, and transport them in safety to their place of destination ; and the insurers, by their contract, engage to pay all such charges, and every expense which is a necessary consequence of changing the ship.

*Wells*, contra. This is an attempt to charge the insurer on the goods, with the payment of freight. This case is said to be analogous to that of a stranding of the ship in the course of the voyage ; but expenses of salvage are general average, to which the freight must contribute. Can the defendants call on the owner of the vessel to contribute out of the freight paid at *Halifax*, towards the payment of the expense of transportation to *New-York* ?

The observation, cited from *Marshall*, is taken altogether from the law, as understood in *France*. It is founded on the 9th article of the declaration of 1779, which is only a municipal regulation. *Emerigon* makes

the observation, in discussing the question, who is to pay the increased freight arising from the hire of another vessel, where the ship has become innavigable during the voyage. He leaves it to the discretion of the master, to hire another vessel or not ; but in case of such hiring, and a consequent augmentation of the freight, the *French* writers are not agreed who is to pay the additional expense of transportation. *Cleirac* considers it as general average. *Valin* admits that the ordinance is ambiguous on this point. *Emerigon* cites a case decided in the *French* admiralty court, where the additional expense of transportation was adjudged to be paid by the owner of the vessel. *Valin*† approves of this decision, though *Emerigon* thinks it incorrect.

In the case of *Baillie* v. *Modigliani*,‡ Lord *Mansfield* observed, that the underwriters on the cargo have nothing to do with the freight. They only guarantee the safe arrival of the goods ; and whether at a greater or less expense makes no difference. Here the goods have arrived safe at their port of destination, with some additional expense, it is true ; but that is not a charge to be borne by the defendants. The plaintiff might have abandoned his goods at *Halifax*, but he chose to bring them to *New-York*, for a better market.

In the case of *Penny* and *Scribner* v. *New-York Insurance Company*,§ it was decided, that the underwriter on goods was not liable for *extra* expenses during an embargo ; and Mr. Justice *Livingston*, in delivering the opinion of the court, says, " On what pretence can the owner of a cargo call on its underwriters to make good any *extra* freight he may have paid for the carriage of it ? He does not undertake that the voyage shall be short or uninterrupted, but that the goods shall arrive safe ; and whether the transportation costs more or less, it is a matter with which he has nothing to do."

Kent, Ch. J. delivered the opinion of the court. It is not a point any where adjudged in the *English* books,

ALBANY, Feb. 1810.

Mumford v. Com. Ins. Co.

* Emerig. tom. 1. p. 431.

† Valin, tom. 1. p. 619.

‡ Marsh. 2d ed. 728.

§ 3 Caines, 155.

ALBANY,
Feb. 1810.

MUMFORD
v.
COM. INS. Co.

who shall bear the charge of the increased freight, in a case like the present, where the ship becomes changed by necessity, during the course of the voyage. The increased freight certainly arose as a direct and unavoidable consequence of the capture and detention of the goods ; and the underwriter engages to indemnify the assured from all losses and damage arising from capture and detention. If the insurer on goods is not to pay this charge, then the capture has produced a dead loss to this amount to the owner of the goods. The case of *Baillie* v. *Modigliani*, (*Park*, p. 70.) which was cited upon the argument, does not apply, for the claim there attempted against the insurer of goods, was not for any excess of freight produced by the capture, but for a *pro rata* freight, arising upon the original voyage, between the time of departure and the capture of the vessel. The insurer in that case had, indeed, no more concern with that freight than the present defendants have with the freight earned by the ship *Ocean*, on the voyage from *Amsterdam*. The insurer on goods has, in general, nothing to do with the expense of transportation, and he does not indemnify against it. But he has to do with a special damage charged upon the owner of a cargo, by reason of a peril within the policy. In *Penny* and *Scribner* v. *the N. Y. Ins. Co.* (3 *Caines*, 155.) there were some observations connected with the opinion of the court, which appear to bear against the present demand, but they ought to be considered as confined to the special case then before the court. The plaintiffs there claimed indemnity from the underwriters on the cargo, for damages arising from a detention by embargo in the *West Indies*. It was not decided in that case whether freight was lawfully due under the charter-party, for the time consumed by the embargo. The better opinion seemed to be, that it was not due ; and besides, that case has no application to this, for the plaintiffs there had chartered the ship under a special contract, as to the payment of

freight, and with which the underwriters on the cargo had certainly no concern, whether the freight was payable by the month, or in a gross sum for the voyage. Here is a loss by capture, falling directly on the owner of the goods. He ought to be indemnified equally as if the loss had arisen from a peril producing a contribution, or general average. " Although the loss which contribution causes to the assured, be a loss which he does not suffer in the goods insured, yet as he suffers it *in relation to those goods*, and in consequence of a peril of the sea, the insurer ought to bear the loss and indemnify the assured." (*Pothier*, *Trait. d'Ass.* n. 52.) The principal laid down by *Pothier*, applies to the one case as much as to the other. *Marshall* (172.) states it as a general rule, that the insurer must pay the increase of freight arising from the necessary change of the ship, and he refers to *Emerigon*, in support of the doctrine.

In a case in which no *English* decisions are to be met with, it is usual and proper to listen, with attention and respect, to the foreign jurists ; for where positive regulations do not intervene, the law of insurance is part of the general law-merchant of *Europe*. *Cleirac* (*Jugemens d'Oleron*, art. 4. n. 4.) says, " that the additional freight in these cases becomes gross average, and falls upon the ship and merchandsie." If this were so, the insurer on the merchandise would have to bear his proportion ; but I see no ground for this opinion, for the case does not come within the reason of the rule for contribution, as this is not an expense incurred for the common safety. The ordinance of *Amsterdam* throws this expense upon the insurer. The *French* ordinance of the marine leaves the point doubtful ; but *Emerigon* (tom. 1. 432.) is decidedly of opinion, that the increased freight arising from the necessary change of ship, ought to fall upon the insurer of the goods, and this, he says, is the language of the new ordinance of 1779. We have nothing to do with the municipal regulation of the ordinance, but the

opinion of the *French* writer is of high and deserved authority.

No doubt arises, but that the freight in question was produced by the capture. The cargo was detained at *Halifax*, when the ship was liberated and ready to proceed. The owner of the goods was of necessity obliged to hire another ship, when his cargo was released. The ship first employed was gone, and was not obliged to stay ; and she had justly earned her full freight, by tendering herself to convey the goods the remainder of the voyage.

Upon the whole, the plaintiff is entitled to recover upon the weight of authority, and the better construction of the contract.

Judgment for the plaintiff.