George Warren & another° *vs.* Alfred Skolfield.

The master of a ship in Liverpool agreed with brokers, who did business there and in Boston, that they should load her for a voyage to Boston, for a fixed commission, and she should be consigned to them there and discharged at a certain wharf by their stevedore; that, should she put into a port for repairs or otherwise, she should be consigned to their agents; and that they should collect all the freight and general average in Boston, and take additional commissions thereon. They accordingly loaded her with goods of various owners, and were paid the first named commission. On the voyage, she put into a port of distress, where they had no agents, and was condemned and sold. The master chartered other vessels there to transport the goods to Boston; and borrowed money on a respondentia bond, and agreed with the obligee to consign the cargoes to an indorsee of the bond. When these vessels arrived in Boston, the brokers demanded that they should

discharge at the wharf specified in the agreement made in Liverpool; but he did not comply with the demand, and denied their right and refused to enable them to collect the freight and general average. *Held*, that, even if he had authority to make the agreement with them in Liverpool, yet they could not maintain an action against his owners for the additional commissions, and for damages on account of the failure to discharge at the specified wharf.

The master of a vessel in a foreign port has not implied authority to bind the owners by an agreement with brokers, who are loading her for a voyage for a fixed commission, that she shall be consigned to them at the port of destination, with a right on their part to supply the wharf and stevedore for her discharge, and collect all freight and genera. average for an additional commission.

CHAPMAN, C. J. This is an action of contract, in which the plaintiffs, who are copartners doing business in Liverpool, England, and in Boston, Massachusetts, claim against the defendant, who was part owner of the ship Rising Sun, certain commissions and general average charges, and damages.

1. Two of the owners of the Rising Sun resided in Alabama; the others, including the defendant, resided in Maine.

Captain Orr, who was master of the ship, made a contract with the plaintiffs at Liverpool June 29, 1866, by which they were to load the ship on the berth for Boston; the ship to be consigned to them at Boston, and to be discharged at Constitution Wharf, or such other wharf to be named by them where she could lie afloat, by the consignees' stevedore. It was further agreed, that, should the ship " put into a port for repairs or otherwise," she was to be consigned to the plaintiffs' agents, and their agents in Boston were to attend to the collection of all freight and general average, upon which they were to have a commission of two and a half per cent. For their services at Liverpool, the plaintiffs were to receive a brokerage of five per cent.; which was paid. In this action they claim to recover commissions on the freight of the cargo, and general average charges, and damages because the cargo was not discharged at Constitution Wharf.

But the events upon which they would be entitled, by the terms of their contract, to recover the charges above stated, at the termination of the voyage, never occurred. The ship was loaded at Liverpool with a large cargo, belonging to and shipped to different persons; and the ship sailed. But instead of pro-

ceeding to Boston, she was compelled by the perils of the sea, in September, to put into the port of St. Thomas, in the West Indies, as a port of distress, and was there condemned and sold. Thus the freight upon which the commissions were to be charged was never earned. The plaintiffs had no agent at St. Thomas, and the captain was therefore compelled to seek aid from other agencies. The master was obliged to transport the cargo by means for which the contract had made no provision. He chartered two ships, which took most of the cargo; and sent the rest on board a third ship. When the ships arrived at Boston, the plaintiffs claimed that their respective cargoes should be discharged at Constitution Wharf; but the master did not assent to this, and the cargoes were discharged elsewhere. The plaintiffs also claimed the right to collect the freight and general average charges; but this was not assented to. The master had a right to resist these claims; for the freights and charges belonged to other voyages, made in other ships, and the contract did not, by its terms, apply to them. A contingency had happened which the contract did not provide for.

The master had borrowed money at St. Thomas of William Murta on a respondentia bond; and it was agreed between the master and the obligee, that he should consign the cargoes from St. Thomas to the agents of the Bank of America of New York, to whom the bond was indorsed. This agreement was indorsed on each of the charter parties there made. The master had a right to enter into this obligation, as against the plaintiffs, and acting as he was bound to do for the interest of the owners. *Stearns* v. *Doe*, 12 Gray, 482.

These views are independent of the question whether the master had implied authority to make such a contract as the plaintiffs are seeking to enforce.

2. By all the authorities, the master is the agent of the owner for the purpose of enabling him to carry on the trade in which the ship is engaged in the usual manner, but his authority is limited to that object. If he exceeds his authority, his acts are not binding on the owner. In *Lemont* v. *Lord*, 52 Maine, 365, 390, it was held that he had no right to intermeddle with the

cargo on the safe termination of the voyage. It does not appear to be usual or reasonable that a broker, who receives his brokerage for loading the ship at the port of departure, may also take the master's stipulation that the cargo shall be consigned to him at the port of destination, with the right on his part to supply wharf and stevedore for the discharge, and attend to the collecting of all freight and general average, for a stipulated commission; and that the master has implied authority to bind the owner by such an agreement. We think the implied authority does not extend so far as this.

*Judgment for the defendant.*

*J. D. Ball,* for the plaintiffs, cited Story on Agency, (7th ed.) §§ 36, 116, 160 *a*, 161, 162; *Stearns* v. *Doe,* 12 Gray, 482; *Negus* v. *Simpson,* 99 Mass. 388; *Huntington* v. *Knox,* 7 Cush. 371; *Bank of British North America* v. *Hooper,* 5 Gray, 567; *Eastern Railroad Co.* v. *Benedict,* Ib. 561; *Searle* v. *Scovell,* 4 Johns. Ch. 218; *Mumford* v. *Commercial Insurance Co.* 5 Johns. 262; *Shipton* v. *Thornton,* 1 Per. & Dav. 216, 233.

*H. C. Hutchins,* for the defendant, besides authorities cited for the plaintiffs, cited Story on Agency, (7th ed.) § 118; 2 Parsons on Shipping, 8; Maude & Pollock on Shipping, (3d ed.) 112–114; *Lemont* v. *Lord,* 52 Maine, 365; *Hurry* v. *Hurry,* 2 Wash. C. C. 145; *The Sir Henry Webb,* 13 Jur. 639; *Reynolds* v. *Jex,* 7 Best & Smith, 86; *Walsh* v. *Purvan,* 8 Exch. 843; *Grant* v. *Norway,* 10 C. B. 665; *Liddard* v. *Lopes,* 10 East, 526; *Thwing* v. *Washington Insurance Co.* 10 Gray, 443, 457; *The Waldo,* Daveis, 161; 2 Phil. Ins. (5th ed.) § 1634; 1 Arnould on Ins. (3d ed.) 350.