## THE INDIANAPOLIS INSURANCE COMPANY *v.* MASON and Another.

Suit by an insurance company upon promissory notes. Answer, that the company was indebted to the defendants in the sum of 999 dollars, on a policy of insurance, by which the company insured the defendants in the sum of 1,309 dollars on 187 tons of hay, at 14 dollars per ton, on board of a flatboat for transportation from *Lawrenceburgh* to *New Orleans;* for that in pursuing said voyage, said boat was stranded by a peril of the river, sank, and became partially filled with water, whereby the hay was damaged 500

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

dollars; that the boat was so damaged that the defendants were compelled, in order to get the cargo to the port of destination, to reship it in a steamboat, the cost of which reshipment was 1,996 dollars, which was necessarily paid by the defendants; that defendants notified the company of the extent of the loss, and claimed one-half thereof from them—a like risk having been taken by another company; wherefore the defendants offered to set off enough of the claim to satisfy the notes, and demanded judgment for the balance. Reply, admitting the policy, but denying liability. Trial by the Court; finding for the defendants for 681 dollars, as the sum due on the policy; and entry of judgment for 380 dollars, that being the difference between the claim sued upon and the finding; and the bill of exceptions states that the plaintiff excepted to the finding and entering judgment against them for 429 dollars for the loss upon the hay, and for 748 dollars on account of extra freight, and also to the opinion of the Court in adding said sum of 748 dollars to the other amounts found by the Court; in order to make up the 20 per cent. loss required by the policy. The policy contained the following provisions: "Touching the perils which the said insurance company are content to bear and take upon themselves in the premises, they are of the rivers, fire, jettisons, enemies, and overpowering thieves (but no other thieves); provided, that the insurers shall not be liable, except in cases of general average, for any loss or damage on hoop or sheet iron, wire, tin plates, grain, seeds, cornmeal, paper, paper hangings, books and stationery, pictures, oil-cloths, musical instruments, cheese, salt, hides, hay, hops, fruits, vegetables and roots, carriages and household furniture, furs, skins, and peltries, unless it amount to 20 per cent. on the aggregate value of such articles. Nor for loss or damage on flax, hemp, hempen yarn, bale rope, cotton bagging, leaf tobacco, cigars, coffee, sugar, rice, bread and nuts, or any other property, unless it amount to 10 per cent. on the whole value at risk, exclusive of all charges and expenses incurred for the purpose of ascertaining and proving the loss." Again: "And in case of any loss or misfortune resulting from any peril insured against, it shall be the duty of the party insured, his, her, or their agents or assigns, to use all reasonable and proper means for the security and preservation, relief and recovery, of the property insured, to the charges whereof the said company agrees to contribute in proportion as the sum herein insured bears to the whole sum at risk; and it is mutually agreed that the acts of either party, or of their agents, in securing, preserving, relieving, and recovering the property insured, shall not be considered or held to be either a waiver or an acceptance of an abandonment." Again: "And in case of disaster, the assured, his, her, or their agents or assigns, shall not sell the property insured (except at the port of destination) without express authority from the insurers, but shall forward it, if recoverable, to the port of destination without unnecessary delay; provided that the articles of the cargo, which may be in a damaged or perishing condition, so as not to admit of delay, may be sold at public sale, at the nearest convenient market, for account and benefit of whom it may concern."

*Held*, 1. That the insurers were liable for the expenses of saving the cargo, without reference to the liability for actual loss to the article insured.

2. That it was the duty of the master, when the boat became disabled, to forward the cargo, unless he had express authority from the insurers to do otherwise, in the earliest, cheapest, and most convenient mode.

3. That under the stipulations in the policy, and the circumstances of the case, the expense of extra freight, being a direct consequence of a peril insured against, was covered by the policy, without regard to the memorandum of percentage.

4. But that the defendants could not recover for the actual damage to the hay —that being less than 20 per cent.; and the expenses of recovering and forwarding the cargo cannot be added to the amount of such damage, to bring it up to the 20 per cent.

Nov. Term, 1858.

The Indian-apolis Ins. Company v. Mason.

APPEAL from the *Dearborn* Court of Common Pleas.

Friday, November 26.

Hanna, J.—This was a suit by the company, as assignee of one *Temple*, upon three promissory notes for about 270 dollars. The complaint is in the usual form.

The defendants answered that the plaintiffs were indebted to them in the sum of 999 dollars, 99 cents, on a policy of insurance issued by said company to the defendants, by which the plaintiffs insured to the defendants the sum of 1,309 dollars, on one hundred and eighty-seven tons of hay, at 14 dollars per ton, on board of a flatboat, from *Lawrenceburgh* to *New Orleans*, &c.; and that in pursuing said voyage, by a peril of the river, said boat ran aground and was stranded, whereby the said boat sank and became partially filled with water, and the hay thereby became wet and damaged to the amount of 500 dollars; that the boat was so damaged that it could not be raised, nor could it proceed further, whereby it became necessary for the defendants, in order to get said cargo to the port of destination, to ship it in a steamboat, &c., which was done, the cost whereof was 1,996 dollars, 20 cents, which was paid by defendants, and which was necessarily and unavoidably paid out and expended by defendants, &c.; that the defendants notified the plaintiffs of the extent of their loss, &c., and claimed one-half thereof from said plaintiffs, a like risk having been taken by the *Rising Sun Insurance Company*. And the defendants offered to set off, and allow to the plaintiffs, enough to satisfy the notes mentioned in the complaint, and prayed judgment for the balance, &c.

The reply admitted the execution, &c., of the policy, but denied that any liability accrued under it.

Trial by the Court, and finding, which, upon request of

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

the plaintiffs, was reduced to writing, and is as follows, to-wit:

"1. That the said flatboat and cargo were owned by the defendants on the 22d day of *December*, 1855; that the cargo consisted of one hundred and eighty-seven tons of hay; and that the defendants, after the making of said policy of insurance, on said day, started with their said flatboat and cargo from the port of *Lawrenceburgh, Indiana*, to the port of *New Orleans, Louisiana*.

"2. That the said boat was properly manned and equiped agreeably to the requirements of said policy of insurance, and that whilst she was pursuing her voyage, and on the the night of the 1st day of *January*, 1856, said boat was, by a peril of the river, run aground and stranded, and in a short time sank to the bottom, by reason whereof a portion of the hay became wet, and was damaged to the amount of 429 dollars, 67 cents.

"3. That the said vessel thereby became so injured that the defendants could not pursue their voyage with it.

"4. That the defendants, for the purpose of saving the cargo, and conveying so much thereof as was not in a perishable condition to the port of destination, laid out and necessarily expended the sum of 1,766 dollars, 20 cents, being 10 dollars a ton on the cargo so forwarded to the port of destination from the place of disaster.

"5. That the defendants were the owners of the flatboat, and were themselves shipping the said hay, and had incurred the ordinary expenses of transporting the hay to the port of *New Orleans*, in the equipment of said flatboat, and in the employment of a pilot and hands at the time of the said accident.

"6. That the ordinary cost of shipping hay from *Lawrenceburgh* aforesaid to the said port of *New Orleans* was, at the time of the accident, six dollars a ton in flatboats.

"7. That for the labor, &c., of the defendants, in the preservation of the cargo, after the accident, the underwriters ought to pay to the defendants the sum of 125 dollars, 50 cents.

"8. That the plaintiffs had due notice of the accident, and were furnished with the proper preliminary proofs by the defendants.

"9. That the quantity of hay shipped by the defendants, to the port of destination, from the place of the accident, is one hundred and seventy-six tons and sixty-two one hundredths of a ton, for which the said defendants paid the shippers, as freight, the said sum of 1,766 dollars, 20 cents.

" Whereupon, the Court doth find for the defendants in the sum of 380 dollars, 64 cents."

No question is made upon the sufficiency of the finding under the statute, by brief of counsel; we shall, therefore, consider that point waived under the 28th rule.

The statute makes it the duty of the Court, when either party requires it with a view of excepting to the decision, &c., to "first state the facts in writing, and then the conclusions of the law upon them, and judgment shall be entered accordingly." 2 R. S. p. 115.

Looking at this finding alone, we are but dimly apprised of the facts and conclusions of law upon which the Court finally determined that the defendants were entitled to a judgment for the sum named. But there is a bill of exceptions, taken by the plaintiffs, in pursuance of this statute, we suppose, which states that the Court found for the defendants 651 dollars, 58 cents, "as for the amount due under said policy and the answer herein," and entered judgment for 380 dollars, 61 cents, being the difference betwen that sum and the notes sued on, &c.; and "said plaintiffs excepted to the finding and entering judgment against said plaintiffs, in favor of said defendants, for 429 dollars, as and for the alleged amount of loss upon said hay; and also for the sum of 748 dollars, as and for the extra freight upon said hay, and to the opinion of the Court in adding said sum of 748 dollars, the extra freight, to the other amounts found by the Court, in order to make up the 20 per cent., in the said policy conditioned."

This explains that which could but imperfectly be understood, in looking at the written finding alone, to-wit, that the Court found that the plaintiffs should pay the one-

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

half (leaving the other company to adjust the other half) of the damage, the extra freight, and the expenses in recovering, &c., and deducting therefrom the notes.

There was no claim for damage to the boat.

There is a clause in the policy as follows:

" Touching the perils which the said insurance company are content to bear, and take upon themselves in the premises, they are of the rivers, fire, jettisons, enemies, and overpowering thieves (but no other thieves); provided, that the insurers shall not be liable, except in cases of general average, for any loss or damage on hoop or sheet iron, wire, tin plates, grain, seeds, corn-meal, paper, paper hangings, books and stationery, pictures, oil-cloths, musical instruments, cheese, salt, hides, hay, hops, fruits, vegetables and roots, carriages and household furniture, furs, skins and peltries, unless it amount to 20 per cent. on the aggregate value of such articles. Nor for loss or damage on flax, hemp, hempen yarn, bale rope, cotton bagging, leaf tobacco, cigars, coffee, sugar, rice, bread and nuts, or any other property, unless it amount to 10 per cent. on the whole value at risk, exclusive of all charges and expenses incurred for the purpose of ascertaining and proving the loss."

The actual damage, as found by the Court, to the hay, being less than 20 per cent., the first question we are asked to determine is, whether the plaintiffs are responsible for any of the expenses incurred after the disaster; and, if so, how much?

By a clause in the policy, the underwriters were, to a certain extent, liable for expenses, &c., in saving cargo, &c. It is as follows:

" And in case of any loss or misfortune resulting from any peril insured against, it shall be the duty of the party insured, his, her, or their agents or assigns, to use all reasonable and proper means for the security and preservation, relief and recovery, of the property insured, to the charges whereof the said company agrees to contribute, in proportion as the sum herein insured bears to the whole sum at risk; and it is mutually agreed that the acts of either party,

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

or of their agents, in securing, preserving, relieving, and recovering the property insured, shall not be considered or held to be either a waiver or an acceptance of an abandonment." It is not, therefore, necessary for us to decide whether the insurers would have been liable without this clause; but as to this, see 3 Kent's Comm., 8th ed., p. 419; 2 Phil. on Ins. § 1777; 2 Arn. on Ins. 953; 4 Wend. 33.

The Court found that the underwriters were liable for expenses, &c., 125 dollars, 50 cents. As this finding is general, as to the liability of the underwriters, we suppose it is proper for the plaintiffs herein to be charged with the one-half only. This, it appears to us, under the circumstances, the plaintiffs are liable for, without reference to the liability for the actual loss to the article insured.

The Court having found that the vessel was so disabled as to render it impossible to transport the cargo on her to the port of destination; and that there was necessarily expended by the defendants, in forwarding it in a substantial vessel, extra freight to the amount of four dollars per ton— the question arises, whether, upon this insurance of the cargo, against perils of the river, the insurer was liable for the difference in the rate of freight. It is stated by a reputable author upon maritime insurance, that the rule in *France* is, that the merchant should bear this extra freight, whenever it is for his benefit that the goods should be so forwarded; and in such case, the same is to be settled as an average loss, by the underwriters, on the goods; and that the rule is the same in the *United States*. 2 Arn. on Ins. side page 960.—2 Phil. on Ins. § 1459. And see, also, 1 B. Mon. 339, 343; *American Ins. Co.* v. *Center*, 4 Wend. 45; *Mumford* v. *The Com. Ins. Co.*, 5 Johns. 262; *Searle* v. *Scovell*, 4 Johns. Ch. 218; *Dodge* v. *The Marine Ins. Co.*, 17 Mass. R. 471.

But the appellant argues as follows: "The loss, in this case, was less than 20 per cent. on the value of the hay—that is, the damage to it was less than that. The subject insured, and all incidental losses, stand or fall with the principal loss; and as, under the policy, there can be no recovery for the principal loss, it not amounting to 20 per cent., there

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

can be none for incidental losses and expenses." As we have already intimated, we think the plaintiffs are liable, under the special clause of the policy, to contribute to the expenses for saving the cargo; and the authorities referred to, appear to fix a liability for the extra freight, unless the position of the plaintiffs, above quoted, is correct. In this connection, we should consider another clause of the policy, as follows: "And in case of disaster, the insured, his, her, or their agents or assigns, shall not sell the property insured (except at the port of destination), without express authority from the insurers, but shall forward it, if recovered, to the port of destination without unnecessary delay; provided, that the articles of cargo, which may be in a damaged or perishing condition, so as not to admit of delay, may be sold at public sale, at the nearest convenient market, for account and benefit of whom it may concern." This clause appears to have been overlooked by the appellant, in the zeal with which the second proposition, above quoted, is urged, for he says, "Nor had the underwriters anything to do with the fact, whether the hay was got to *New Orleans* before or after the river froze, or whether it got there in the winter or spring." We think this clause made it the duty of the master to forward the cargo, unless he had express authority from the insurers to do otherwise, &c. And as the finding of the Court is, that the expenses were necessarily incurred, we must presume in favor of that finding, that there was no direction given by the company, and that the earliest, cheapest, and most convenient mode was adopted. This presumption in favor of the finding of the Court, that the expenses were necessary, is fortified by the fact, that the memorandum exempting the underwriters from accountability on certain articles named, unless the loss amounted to a certain per cent. of the value, is supposed to be inserted to cover the natural or unavoidable decay or deterioration of such articles. 2 Arn. on Ins., side page 852. Now, if hay would, between the ports of *Lawrenceburgh* and *New Orleans*, deteriorate so rapidly on board a flatboat, as to render it doubtful whether a loss in its value of anything less than 20 per cent. was caused by

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
V.
MASON.

such deterioration, from inherent causes, or by the perils of the river, then it is manifest that if it remained long in a stranded boat, or upon an exposed shore, the loss would have been great to some one. The finding would appear to repel the presumption, that it would have been to the interest of those concerned, to have suffered it to remain for any great length of time at the place of disaster.

It cannot, under this finding, be controverted that it was placed in such exposed condition, in consequence of one of the perils of the river insured against; nor can any other just inference be drawn from this finding, but that the expense of extra freight was necessarily incurred, not solely to prevent the actual loss from exceeding 20 per cent., but to save the cargo, which otherwise might ultimately have been a total loss, from this peril of the river. Under the stipulations in this policy, and the peculiar circumstances of this case, indicated by the finding of the Court, we think the expense of extra freight was a direct consequence of a peril insured against, and was covered by the policy, without regard to the memorandum of percentage. 2 Phil. on Ins. § 1777.

In *Peters* v. *The Warren Ins. Co.*, 14 Peters, 99, the company insured *Peters* to the amount of 8,000 dollars, on the ship *Paragon*. The policy contained the usual risks, and among others, that of perils of the sea. It appeared that the ship, whilst pursuing her voyage, came in contact with another vessel and sank her; the result of which, and the proceedings instituted thereon, in a foreign port, was that the *Paragon* had to pay one-half the expense to repair her own injuries, to-wit, 400 dollars, and one-half the injuries to the other vessel, to-wit, 3,000 dollars; and the Supreme Court of the *United States* say, that, "Upon this state of facts, the question arose, whether, in this case, the contributary amount paid by the *Paragon* on account of the collision, was a direct, positive, and proximate effect from the accident, in such sense as to render the defendant liable therefor." There was no question but that the insurers were liable for the injury to the *Paragon* itself. The Court held that they were also liable for the contribu-

Nov. Term,
1858.

The Indian-
apolis Ins.
Company
v.
Mason.

tion actually paid, as it was a consequence of the collision, and a damage immediate, direct, and positive therefrom, and in no just sense a substantive, independent loss.  13 Curtis, 370.

So, in the case of *Hall* v. *The Washington Ins. Co.*, Judge Story held the insurance company liable for damages caused by the negligence of the mates, &c., in suffering the ship *Columbia* (upon which the company had an insurance), to come in collision with the *Ritchie*, by which both vessels were injured, and for which the *Columbia* paid to the *Ritchie* a certain sum, for a compromise—not only liable for the damage to the *Columbia*, but for the sum paid on the compromise.   He used the following language: "The insurance does not attach merely to the extent of the direct injury sustained by the very thing insured." "Any and every expense borne by, and chargeable upon the owner of the thing insured, as a direct and immediate consequence of a peril insured against, is covered by the policy."   2 Story, 176.   See, also, *Waters* v. *The Merchant's Louisville Ins. Co.*, 11 Peters, 213; 12 Curtis, 404; *Potter* v. *Ocean Ins. Co.*, 3 Sumn. 27; *Id.* 389.   In the last-cited case, Judge Story used this language: "When the thing insured becomes, by law (that is, by the operation of some rule of maritime law), directly chargeable with an expense, &c., in consequence of a particular peril, the law treats such peril, for all practical purposes, as the proximate cause of such expense."   This position of Judge Story appears to be approved by an acknowledged authority on insurance. 2 Arn. on Ins. (by Perkins) 767.   And, also, by Chancellor Kent.   3 Kent's Comm., 5th ed., 301, note.

Having disposed of the question as to the amount of expenses for which the underwriters were liable, the next inquiry is, as to whether they were liable for the actual damage to the hay.   That damage, as found by the Court, was less than 20 per cent., and could not, therefore, he held a correct charge, under the policy, against the insurers, unless the expenses necessarily incurred should be added thereto.   This could not, according to the weight of authorities, be done.   The rule appears to be settled.   2 Arn.

on Ins. 867.—Stevens on Average, 5th ed, 250.—Benecké Pr. of Indem. 472.—*Brooks* v. *Ocean Ins. Co.*, 7 Pick. 259, 270.—3 Kent's Comm., p. 282.

Whether, in the establishment of this rule, the interest of all parties has been properly guarded, it is, perhaps, now too late to inquire.

The Court below, therefore, committed an error in adding the amount found due from the underwriters, for recovering and forwarding the cargo, to the actual damage done to the article insured. That actual damage being less than 20 per cent., should, in accordance with the beforementioned rule, have been excluded.

*Per Curiam.*—The judgment is reversed with costs.

*T. D. Lincoln, —— Smith, —— Warnock, P. L. Spooner*, and *A. Brower*, for the appellants (1).

*T. Gazlay* and *B. J. Spooner*, for the appellees (2).

Nov. Term, 1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

(1) Mr. *Lincoln*, for the appellants, made the following points:

"I. A policy insuring *R. & C. Mason* 14 dollars a ton upon a cargo of hay, per flatboat from *Lawrenceburgh* to *New Orleans*, does not cover any expenses naturally incidental to the carriage of the cargo, though extraordinary, and though caused by a peril named in the policy; and does not, therefore, cover any extra freight which the owners may be compelled to pay on account of such peril, which disables the flatboat, and requires a reshipment of the cargo.

"II. The extra freight is the amount paid for carriage upon the new craft, over and above the whole freight of flatboat from *Lawrenceburgh* to *New Orleans;* but such extra freight is incidental, not to a loss on the cargo, but to a loss on its carriage. Nor is it incidental to a loss upon the boat.

"III. Neither extra freight, nor any loss to the boat, can be recovered upon such a policy. They are losses incidental to different and distinct subjects of insurance, from the cargo. Nor can any expenses, properly incidental to a loss upon the cargo, be added to the damage on the cargo to make up the per cent. of loss required by the policy, to enable the insured to recover."

Upon these points, the following is an abbreviation of the counsel's argument:

1. The policy insured the *Masons* against damage that should fall to the hay from the dangers of the river. It did not insure them against any and all damages which might happen to them on account of the voyage, or against any and all damages attending upon the voyage. There are many losses which might befall them on account of this adventure, which would not at all injure or damage the hay. The damage to the hay was one thing—the damage to the flatboat was a very different thing. So the delay, on account of the damage to this boat, would bring many expenses upon the *Masons*, they being their own carriers, which would be quite different from a damage to the hay, or to the boat. Then, again, the defendants may suffer damage because of

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

such peril, of still another kind, which would not fall under either a damage to the hay, the boat, the expense of carrying it, or to the freight. They may have suffered in their profits on the hay at the port of destination. If there had been no accident or delay, the profits would, or might have been much greater to them, they being the owners of the hay, and directly interested in the market at *New Orleans*, or the price of it at that port. Now these different kinds of damage which I have named, all proceed from separate and distinct insurable interests. Each could have been insured by itself, without there being a double insurance, or without being subject to the clause in the policy against prior, subsequent, or other insurance contained in it. *The Ætna Ins. Co.* v. *Tyler*, 16 Wend. 400.—1 Phil. on Ins., ch. 3, §§ 3 to 8, 10, 11.— *Marine Ins. Co.* v. *United States Ins. Co.*, 9 Johns. 190.—*Reed* v. *Cole*, 3 Burr. 1512.—*Aldrich* v. *The G. S. Ins. Co.*, 1 Woodb. and M. 275.—1 Arnold on Ins. 251, 252.—*King* v. *State M. F. Ins. Co.*, 7 Cush. 4, 5.—*Columbian Ins. Co., Alex.*, v. *Lawrence*, 2 Pet. 25.—*Flint* v. *Flemyng*, 20 E. C. L. 341, 342.— *Devaux* v. *J'Anson*, 35 *id.* 207.—1 Arnold on Ins. 238. Ordinarily, each of these interests is separately insured. For instance, the owners of the flatboat could have insured themselves against loss or damage to it. That would have been a separate insurance, entirely disconnected from that on the hay or cargo. They could also have insured their freight, or the expenses of the carriage of the goods, as well as their anticipated profits. 1 Arnold on Ins., tit. Insurable Interest, art. 2, 5, 7, 9.—1 Phil. on Ins., ch. 3, §§ 3 to 11.—*Flint* v. *Flemyng*, 20 E. C. L. 341, 342.—*Devaux* v. *J'Anson*, 35 *id.* 207.—*French* v. *The Hope Ins. Co.*, 16 Pick. 400. This is not changed by the fact that the defendants owned the boat as well as the hay. 1 Arnold on Ins., tit. Insurable Interest, art. 1 to 9.—*Caze* v. *Baltimore Ins. Co.*, 7 Cranch, 363.—*Columbian Ins. Co.* v. *Catlett*, 12 Wheat. 394, 395.—1 Phil. on Ins., ch. 3, § 8.—*Flint* v. *Flemyng*, 20 E. C. L. 341, 342.—*Devaux* v. *J'Anson*, 35 *id.* 207.

What has been said above is equally true as to the expenses of getting boat and cargo to the place of disaster, and keeping the crew while delayed by the disaster. These expenses are chargeable to the freight or carriage of the cargo to the port of destination, and would be chargeable to the carrier, not to the owner of the cargo or boat, if they were different parties, as they well might have been. The hay might have been owned by the defendants, the boat by another person, and the freight or the carriage might have devolved upon a third person who had hired the boat for the trip, and was carrying the hay for an agreed freight. The owner of the boat would then have had it at *New Orleans* for sale, or any use he could have put it to. The owner could also have agreed with any underwriter as to the profits, and however speculative they are in their nature, could have insured the sum agreed upon, and have recovered that also. 1 Phil. on Ins., ch. 3, § 8.—1 Arnold on Ins. 222, 238.— *Patapsco Ins. Co.* v. *Coulter*, 3 Pet. 222.—*Alsop* v. *Com. Ins. Co.*, 1 Sumn. 451.—*French* v. *Hope Ins. Co.*, 16 Pick. 397. These principles are familiar to all those who have anything to do with the law of insurance, and the foregoing authorities fully establish them. Cases of this kind are constantly arising, and the books are full of them.

The cases of *Flint* v. *Flemyng*, 20 E. C. L. 341, and *Devaux* v. *J'Anson*, 35 *id.* 207, are examples in which the owners of the ship, under a policy on freight, recovered the profits which they expected to have made in the carriage of their goods upon their own vessel. The only question, even, was whether

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

the interest insured should not have been more fully and directly described; but the Court held that freight, as such, was not possible, inasmuch as the party owning the vessel and goods was carrying them; but that what would have accrued to them in the carriage of the goods would be the same as freight, and hence, that it was substantially described. In these cases they could also have insured the goods themselves, and the vessel, and also the profit they expected to make upon them, after allowing the cost and expenses of carriage. And in relation to this last item, it being agreed upon by the parties, the Courts never interfere, though the profits may appear large, and may look like wagering, provided the insurance was intended by the parties as a *bona fide* insurance. See *Alsop* v. *Com. Ins. Co.*, 1 Sumn. 451. And as to profit, it is not necessary that the party own the goods. If he had an agreement with the owner, whereby he is to have half the profits, he can agree with an insurance company as to the value of them, and can insure them. See *French* v. *Hope Ins. Co.*, 16 Pick. 400. And in this country it is not necessary to show that profits would probably have arisen. It is only necessary to show that the insured had an interest or claim to something by contract or otherwise, from which there was a possibility of profits. 1 Arnold on Ins. 246.—*Patapsco Ins. Co.* v. *Coulter*, 3 Pet. 240, 241.—*Mumford* v. *Hallett*, 1 Johns. 433.—*Fosdick* v. *Norwalk Ins. Co.*, 3 Day, 108.

The earlier *English* cases agree with the rule in this country. No proof whatever is required that profits would have accrued. It is only necessary to prove the loss of something from which, in the nature of things, profits might have arisen; and the interest of the party. So, too, commissions are insured on goods shipped or to be shipped or forwarded to another for sale. If the party had arrangements by which the goods were to come, and they did not arrive because of some peril insured against in the policy, he can recover the value of his underwriter. Yet the owner of the goods can insure them for their full value, and neither party could recover anything covered by the other. *French* v. *Hope Ins. Co.*, 16 Pick. 399.—1 Arnold on Ins. 241. And a mortgagor can insure and recover for the full value of the property (1 Phil. on Ins. 106); and the mortgagee, at the same time, can also insure to the full value, so that it does not exceed his debt secured by the property. *Carpenter* v. *Prov. Wash. Ins. Co.*, 16 Pet. 501.—*McDonald* v. *Black*, 20 Ohio R. 185. Neither party would have any interest whatever in the other insurance. *King* v. *State Mutual Ins. Co.*, 7 Cush. 1. The mortgagor could not recover anything upon the policy of the mortgagee, nor the mortgagee anything upon the policy of the mortgagor. . They cover different things, different interests, different subjects of insurance.

Now, as has been before stated, this policy is not upon the adventure generally, or to secure the *Masons* from any and all losses which they might suffer, from dangers of the river, growing out of the adventure as owners of the boat and the cargo, and as carriers of the same, or which they might suffer as carriers of the hay. It is a policy upon the hay, in which the plaintiffs in error agree to make good to the *Masons* the damage which occurs to it by or from any danger of the river. It is not "the damage which comes to the insured." It is the damage which shall come to, or befall the cargo; and indeed not all the damage which they may suffer from dangers of the river on account of the hay; for such dangers may so far delay the voyage that the hay would sell at so low a price as that they would lose money. This loss would be covered by

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

an insurance of the profits, and they might have been agreed upon. Unless these principles are kept constantly in view, the insurer would have imposed upon him risks for which he had received no premium, and the insured would, under a policy upon the cargo, or hay, recover for the same losses, which others only recover for by an insurance upon the cargo, the boat and the freight, and the expenses of getting the same to the port of destination. It is also evident that these various provisions of this policy in reference to "prior, subsequent, and other insurance," now to be found in all policies, and intended to protect the underwriter against the numerous frauds caused by over insurance would be useless, and nothing but confusion would prevail, unless these distinctions are rigidly enforced by the Courts.

The foregoing views are very well expressed by LIVINGSTON, J., in the case of *Penny* v. *New York Ins. Co.*, 3 Caines' R. 159. He says :

"In this way a person who has insured one species of property, can never be called on to make good a particular damage which may have happened to another, nor exposed to a loss not within the risk which he has assumed. On what pretense, then, can an owner of a cargo call on its underwriters to make good any extra freight he may have paid for the carriage of it. He does not undertake that the voyage shall be short or uninterrupted, but only that the goods shall eventually arrive safe; and whether the transportation cost more or less, it is a matter with which he has nothing to do. Whether the vessel encounters a tempest, or be embargoed on her way (if no abandonment be made during the detention), is to him of no consequence, so that the goods finally arrive, as was the case here, without damage at their destined port."

2. The loss in this case was less than 20 per cent. on the value of the hay— that is, the damage to it was less than that. The subject insured and all inci- dental losses, stand or fall with the principal loss; and as under the policy there can be no recovery for the principal loss, it not amounting to 20 per cent., there can be none for any incidental losses and expenses.

There is nothing in the law of insurance which can successfully prevent double insurance or over insurance, and numerous frauds upon the under- writer were the consequence. Parties got largely insured, and the property was destroyed. It is now shown that this was the cause of the destruction of the *Martha Washington*. Underwriters now generally guard themselves by provisions in their policies against "prior, subsequent, or other insurance." Such provision is made in this policy. Prior, subsequent, or other insurance, of course means such insurance upon the same interest or subject of insur- ance. *The Ætna Ins. Co.* v. *Tyler*, 16 Wend. 400.—*Carpenter* v. *Washington Ins. Co.*, 16 Pet. 495.—*Godin* v. *London Ass. Co.*, 1 Burr. 489.

Now it is clear that under such a policy neither the insured nor the insurer could be protected, without a due regard to the above principles. Suppose, in this very case, the *Masons* had a policy covering these extra expenses, could the underwriters now before the Court, have set up such insurance as in any way affecting the recovery or the amount to be recovered? It is clear that they could not. 16 Wend. 400.—1 Burr. 469. If they could not, it is equally clear that these underwriters cannot be directly or indirectly involved in these expenses. 1 Arnold on Ins., 238, 297, 298. Nor can any of these expenses to the insured be added to the loss on the hay to make up the 20 per cent. 2 Arnold on Ins., 866.—*Biays* v. *Ches. Ins. Co.*, 7 Cranch, 415.—*Schultz* v. *Ohio Ins. Co.*, 1 B. Mon. 339.

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

The underwriter does not guaranty that the owner of the hay shall get it there at any particular time, or get it there at all, or that it shall be at any ordinary expense. 1 B. Mon. 339. He has nothing whatever to do with the expense of getting it to the place of destination, or with the time of getting it there, or with the market; nor can the owner of the hay press it along in order to get a favorable market at the expense of his underwriter. To the latter, it is a matter of entire indifference what delays there may be, or what the expense is. He does not agree to protect the owner from loss, generally, on account of the adventure, which may come from the perils named in the policy, but agrees that, as against all such perils, he will protect the hay, and will pay the damage which it may suffer. The owner of it, if he be his own shipper, can insure these various subjects of insurance, such as the boat, the freight, or the expense of the trip, and fully protect himself in that way. But he cannot do it simply by insuring the cargo. The fallacy of the argument on the other side is, in claiming, as was claimed in the Court below, that the fact that the persons who owned the hay were also shipping it, makes their case a peculiar one, or gives them any right to a larger recovery than they would be entitled to, were they not owners of the flatboat, and the carriers of their own hay or produce. 7 Cranch, 364.—12 Wheat. 304, 305.—*Flint* v. *Flemyng*, 20 E. C. L. 341.—*Devaux* v. *J'Anson*, 35 *id.* 216.

It will readily be admitted that the insurance in question would not have prevented the *Masons* from taking another policy on their flatboat, and still another on their freight—they agreeing with the underwriter upon its value—or from taking a policy to cover the expenses of carrying it. The policy, in such case, would not cover the same subject of insurance, and would not, therefore, be in the nature of double insurance, or prior or subsequent insurance. 1 Arnold on Ins., 260, 298, 299.—1 Phil. on Ins., ch. 3, §§ 3 to 8, 10, 11, and cases before cited. See, also, *Godin* v. *London Ass. Co.*, 1 Burr. 495; *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 400; *Harris* v. *Ohio Ins. Co.*, 5 Ohio R. 461; *Flint* v. *Flemyng*, 20 E. C. L. 341; *Devaux* v. *J'Anson*, 35 *id.* 217; *Columbian Ins. Co.* v. *Lynch*, 11 Johns. 233.

Hence, there was error in the Court below in adding the extra freight (four dollars per ton) to the damage done the hay, and allowing the recovery therefor. In no event, and in no case, could this be allowed, except where the damage to the hay was, standing by itself, recoverable; because that being the damage insured against, all incidental expenses fall with it when it falls. 2 Arnold on Ins. 866.

This case depends upon the general principle, that all incidental expenses are recoverable, only when the principal claim is recoverable. If the principal claim is not recoverable, the incidental claim is not. This is a general and well settled rule, applicable as well to other subjects as to insurance; and none of these expenses would be recoverable in this case—not even any portion of the 125 dollars, except under the special covenant to that effect, because the main loss was not recoverable. This special covenant is put into the policy in order that the insured or his agents shall do all that he can to lessen the loss. This he ought to do without the covenant, but the covenant compels him to do it, and he recovers the expense of it under the covenant; and this whether the loss amounts to 20 per cent. or not; and as he recovers that expense whether the damage amount to 20 per cent. or not, that amount cannot be added to the damage to make up the 20 per cent. This is quite

Nov. Term,
1858.

———————

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

evident. As to the freight or extra freight, I have in the course of this brief endeavored to show that it was chargeable to another subject of insurance, and is not incidental expense to an insurance upon the cargo. These incidental expenses are such as storage, protest, &c. 2 Arnold on Ins. 867.

These principles seem to me to be well grounded in law; and I should not go further into the argument, except that there is one case which may at first seem to be in contradiction to them. I refer to the case of *Mumford* v. *The Commercial Ins. Co.*, 5 Johns. 262. Even this case recognizes the general rule here contended for, that the underwriter upon the cargo has nothing to do with the expense of getting the cargo to market, or with the delays and consequent expense of the same, though caused by a peril named in the policy; and this general principle stands in the way of allowing extra freight in this case. But that case is inconsistent with general principles, and has never been recognized as fixing a general rule. It has never been followed, and has always been put as a special case standing upon its own peculiar circumstances. It has several times since been referred to doubtingly, and the cases carefully distinguished from it, where, indeed, it is difficult to see any real distinction. See *Dodge* v. *The Union Ins. Co.*, 17 Mass. R. 477; *Schultz* v. *Ohio Ins. Co.*, 1 B. Mon. 345; Phil. on Ins., 228, 229; 2 Arnold on Ins. 886; *Penny* v. *New York Ins. Co.*, 3 Caines' R. 159. No one, I think, can read the opinion in that case, and read the cases since decided referring to it, without feeling that nothing but the name of Chancellor KENT prevented the judges, in the last-named cases, from declaring the case not to be law. They, however, take a more common course. They do not approve the case, but endeavor to distinguish the subsequent case from the previous one.

Now there is nothing in the case before the Court to assimilate it to that of *Mumford* v. *The Commercial Ins. Co.*, even if that were acknowledged law. The facts are entirely different. There is, indeed, nothing in the case before the Court showing what portion of the freight had been earned by the flat-boat, or whether they had earned any, or were in a condition to earn any. Indeed, according to well recognized principles of law, they had earned none whatever; for the voyage had not been completed, and the vessel had been destroyed, and the flatboat trip substantially given up; so that it earned no freight, and would have earned none if another party had been the carrier of the hay. Whereas, in the case in 5 *Johnson*, the whole freight had been earned. Flanders on Shipping, § 251.—*Halverson* v. *Cole*, 1 Speers, 322.— *The Ann Richardson*, Blatchf. 358.—*Caze* v. *Baltimore Ins. Co.*, 7 Cranch, 358. —Abbott on Shipping, new ed., 406. See *Holliday* v. *Coe*, 3 Ind. R. 26. So that nothing can be obtained from the case before referred to in aid of the one before the Court.

But let us look to the case of *Schultz* v. *The Ohio Ins. Co.*, 1 B. Mon. 345, which is the last and most fully considered case to be found bearing upon the subject. According to that case, clearly nothing could be allowed for this freight, for the hay was not sent to *New Orleans* for the benefit of the underwriter, but for the benefit of the owner, and to get it to the higher market at *New Orleans;* and clearly, as he got the special benefit of this carriage, and as the underwriter could get none of it, why should the latter pay for it? The case of *Schultz* v. *The Ohio Ins. Co.* is directly against such a recovery.

Suppose the hay to have been sold on the spot, there would have been no 20 per cent. loss for the underwriter to pay. It is valued at 14 dollars per ton

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

only, and that is all the underwriter, in any event, could have been required to pay—even if totally destroyed. It would have brought 20 dollars per ton, where it was; and it would have suffered no 20 per cent. loss, as the case shows. The loss was but a trifle over 16 per cent.

It was, undoubtedly, for the interest of the owner to carry it on, but being so, and for his benefit, he should pay for it, and not endeavor to throw it on the underwriter, who had no interest whatever in it. As to the expense, whether it be greater or smaller, the plaintiffs in error had nothing to do with it. Nor had the underwriter anything to do with the fact whether the hay was got to *New Orleans* before or after the river froze, or whether it got there in the winter or spring. This is clearly the case, where the reshipment was solely for the benefit of the owner of the hay, and was dictated for his interest, and in which the underwriter upon the hay could have no imaginable benefit. The expense of saving and protecting the hay, has been specially found to be 125 dollars, and that, under the special covenant, the underwriters must pay, at least, their proportion of it, each company paying its half; but the expense of reshipping cannot be charged to them, as that was done in order to get immediately to a profitable market. 1 B. Mon. 346.

The only case in which there is any sense in charging such expense to the insurer, is where the property is perishable, and there is no market for it at the place of disaster, and hence, it must be shipped on to save it from total loss. There, as the total loss would fall on the insurer, and the forwarding of the goods is to avoid that loss, and save the insurer from greater loss, there is some reason for saying that, in such a case, he shall bear the extra expense of such forwarding. Such a case is one of a pure salvage loss. And even in this case, these charges are not allowed, unless the damage to the subject of insurance, outside of these expenses, would be recoverable. Being incidental expenses to the main, or insured loss, they can only be recovered when that loss is recoverable. 1 B. Mon. 346.

The question whether these expenses could be so added as to make the required per cent., was made in the case of *Schultz* v. *The Ohio Ins. Co.*, 1 B. Mon. 346. It is the only case that I have found, in which the question was directly made, whether these expenses could be added to the losses, to make up the required per cent. The case depended entirely upon that question, and the extra freight and expenses added to this, would have made the required per cent. The Court held that the extra freight was not recoverable, and rendered judgment for the expense of saving and preserving the cargo, under a covenant like that in the policy in question. The damage to the property was not allowed, nor the extra freight. The text books all take the ground that these incidental expenses cannot be added to the main damage, to make up the required per cent. 2 Arnold on Ins. 867, 868, third and fourth rules.

3. The usual way of ascertaining the damage, that is, the per cent. of damage on the property, is by comparing the sales of the damaged article with the sound value, at the place of destination. 2 Arnlod on Ins. 966, 967, 968. It is there laid down that—

"There is, therefore, an important distinction running through the whole of this branch of insurance law, viz., that the extent of loss the assured on goods sustains by the sea-damage, is one thing—the amount which the underwriter has to pay in respect thereof, is quite another; accordingly when goods arrive sea-damaged, two points are to be ascertained : first, the extent of depreciation

Nov. Term,
1858.

The Indian-
apolis Ins.
Company
v.
Mason.

in value which the goods have suffered; secondly, the amount which the under-writer ought to pay in respect thereof.

"The first point is ascertained by simply comparing the price for which the goods would have sold in the market, had they arrived there sound, with the price for which they actually do sell, arriving there damaged.

"Generally speaking, in practice, the damaged goods are actually sold by public auction, and the amount they realize is called the proceeds of the damaged sales; the value which they would have sold for, if sound, is estimated by supposing them to be sold at the current price for sound articles of the same kind, in the same market, and the amount supposed to be realized by these *per forma* sales, is called the proceeds of the sound sales.

"The difference, then, between the market price of the sound, and the market price of the damaged goods, or, in technical language, between the sound and damaged sales, gives the direct amount of the merchant's loss.

"But this cannot be the amount the underwriter has to pay; for, first, it would make the market price of the goods, at the port of destination, the basis of the underwriter's liability, when, as we have just seen, the only true basis of such liability is their prime cost at the port of loading; secondly, it would involve the underwriter in the rise and fall of the markets, with which, as we have also seen, he has no concern; that is, for the same amount of sea-damage, he would have to pay more when the goods come to a gaining, and less when they come to a losing market; while the desideratum is, to obtain some uniform measure, or standard of value, by which the underwriter has to pay, in respect of a particular loss on damaged goods, which shall be always the same when the proportional extent of damage is the same.

"The object, then, in comparing the proceeds of the sound and damaged sales, for the purposes of indemnity under the policy, is not to ascertain the direct amount of the merchant's loss, but its relative amount—the proportion, that is, which it bears to the price at which the goods would have sold if sound; the question being, not whether the depreciation amounts to any given, fixed sum, but whether it amounts to one-half, one-fourth, or one-tenth of the sum for which the goods would have sold, if sound; whether, in a word, the com-modity is one-half, one-fourth, or one-tenth the worse for the sea-damage. When this is ascertained, the liability of the underwriter is ascertained also; for he pays the same proportional part, whether it be one-half, one-fourth, or one-tenth of the prime cost or value in the policy.

"The difference between the sound and damaged sales affords the proportion of loss in any given case, *i. e.* it gives the aliquot of the original value which may be considered as destroyed by the perils insured against; when this is as-certained, it only remains to apply this liquidated proportion of the loss to the standard by which the value, as between the assured and the underwriter, is calculated, (*i. e.* the prime cost or value in the policy), and you have the one-half, the one-fourth, or the one-tenth of the loss, in terms of money.

"Thus, the sum which the underwriter will have to pay, will depend solely on the relative extent of the loss, and will be the same, whether the goods ar-rive at a gaining or a losing market.

"In short, that which the assured loses by the depreciation of his goods, is an aliquot part of the market value for which they would have sold, had they arrived sound, at their port of destination; that which the underwriter pays in respect of such loss, is the same aliquot part of their prime cost or value in

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

the policy; thus, if the damage amounts to half the sound value of the goods, the underwriter pays half the sum he has agreed to insure; if to a third, then he pays a third of that sum, and so on, in exact proportion to the extent of the depreciation."

That such a rule is indispensible, is evident from the fact that the agreed value in the policy (all that the underwriter can, in any event, be made to pay), is much less than the real value of the article at the port of destination. Into the latter, have gone the expense of the transportation, and the profits of the markets, &c. That shows the per cent. of damages. When that is ascertained, if it be the required per cent., then the expense of ascertaining it, the protest, and other incidental expenses to the damage, are also payable, otherwise not. 2 Arnold on Ins. 866, 867.

4. The extra freight is to be obtained in all such cases, by subtracting from the freight paid on reshipment by steamboat, the full flatboat freight. In this case, it was by subtracting from the ten dollars per ton paid the steamboat, the regular flatboat freight, six dollars per ton. This is upon the idea that the flatboat, not having performed the voyage, earned no freight whatever. The boat was not able to proceed, and the flat-boatmen could not get another. If the *Masons* had hired this property carried, instead of carrying it themselves, they would have been compelled to pay nothing for the service. They could have compelled the carrier to have delivered the hay in *New Orleans*, within a reasonable time, for the agreed freight, no matter what the expense might be to him; or they could take it free of any claim for freight. Flanders on Shipping, § 251.—Abbott on Shipping, 405, last ed.—*Ship Nathaniel Hooper*, 3 Sumn. 550.—*Saltus* v. *Ocean Ins. Co.* 14 Johns. 138.

Hence, the flatboatmen earned no freight. *Holiday* v. *Coe*. 3 Ind. R. 26. The freight being six dollars per ton, that would be the ordinary cost of getting his cargo to market. The extra freight is, therefore, four dollars per ton.

5. Even if this could be recovered, in case the hay was damaged to the amount of 20 per cent. independently of it, it cannot now be recovered, because such expenses, even when recoverable, cannot be added to the main damage to make up such loss. Such a rule would lead to all kinds of frauds upon the underwriters. It would hold out an inducement to flatboatmen, at any and all times to abandon their duty, at any and every difficulty they met with.

At the rate of 14 dollars per ton, the underwriter agreed to make good the damage done to the hay, provided that damage amounted to 20 per cent. upon its value. This per cent. of damage could only be ascertained by the sales at *New Orleans*. They also agreed to pay their proportion of any expense made, necessary to save and protect the property when in peril; not any expense of transporting it, though extra. That expense, in this case, was 125 dollars on both policies, a portion of which is all that can be charged to the plaintiff, at any rate. 2 Arnold, 866, 867. Upon this point, in closing, I would refer the Court to the case of *Biays* v. *Chesapeake Ins. Co.*, 7 Cranch, 415, in which it was held that the underwriters were not liable for the expense of saving goods in peril, under a clause similar to the one in the policy in question, because the underwriter would not have been liable for the loss on the goods so saved, however great it was. That is undoubtedly sound law, as applicable to that case, and it throws light upon the questions in this case; for, if a party cannot be liable where there is a covenant for such labor and expense, for the reason that he could not be made liable for the loss these expenses were intended to

Nov. Term,
1858.

THE INDIAN-
APOLIS INS.
COMPANY
v.
MASON.

prevent, much less can he be held liable for incidental expenses, where he is not liable for the main or principal expense to which such expenses are incident. In that case, the Court sum up by saying: "We are, therefore, of opinion that the underwriter, not being answerable for the principle loss in this case, they cannot be for the subsequent expenses which were incurred in recovering the property.

(2) Mr. *Gazlay* made the following argument for the appellees:

The appellants occupy much space in endeavoring to establish the proposition, that there are three separate insurable interests on a cargo shipped in a boat, to-wit, the cargo, the boat, and the freight; and that because these interests are each separately the subject of insurance, it follows that the insurance companies having only insured the cargo, are not liable, in any case, for extra freight necessarily incurred in transhipping, &c.

Admitting the proposition contended for by the appellants, that the boat, the cargo, and the freight are each separate insurable interests, it by no means follows, we think, that the appellants are not liable for the extra freight, in the case at bar; and the authorities cited do not support such a conclusion, as we understand them.

There are cases, no doubt, where the claim for extra freight would not be a valid claim; for instance, in case the cost of transporting the cargo from the place of disaster to the point of destination had been no greater than if no disaster had taken place. In such case the insured could have no claim, for he would have suffered no loss. But the case at bar is different. Here the transhipment was a necessary consequence of the disaster; and by this disaster, a peril which it is not denied the *Masons* were insured against, they were compelled by circumstances to pay ten dollars per ton to get the hay to *New Orleans*, being four dollars per ton over and above what the cost of freight would have been, if the disaster had not taken place.

In the case of *Schultz* v. *The Ohio Ins. Co.*, often cited, and seemingly relied on strongly by the appellants, the Court do not decide that extra freight is not a valid charge against the underwriters. The Court concedes that the insurers may be liable for a reasonable increase of the expense of transhipment on partial·loss of an insured cargo, in case the charge for extra freight had been rendered necessary by the perils insured against. 1 B. Mon. 347. The extra freight, however, was not allowed in that case, because the facts in the case did not warrant such an allowance.—*Ibid.*

Chancellor KENT, in his Commentaries, (vol. 3, p. 338,) remarks: "If extraordinary expense and extra freight be incurred in carrying on the cargo in another vessel, when the first one becomes disabled by a peril of the sea, the *French* rule is to charge the same upon the insurer of the cargo. This question is left undecided in the *English* law, but in this country we have followed the *French* rule."

This was also the ruling of the Court in the case of *Mumford* v. *The Com. Ins. Co.*, 5 Johns. 262, commented on by the appellants in their brief. The appellants say that the above case has never been followed, but has always been regarded as a special case, not fixing a general rule, and referred to doubtingly, quoting the case of *Schultz* v. *The Ohio Ins. Co.* in support of that opinion. This case is expressly commented on by the *Kentucky* Court of Appeals, not doubtingly, but the principle is clearly laid down, that when the transhipment was necessary to the completion of the adventure, and the safe arrival of

the goods, &c., the owner had a right to incur the expense of transhipment. <span></span>Nov. Term,
1 B. Mon. 343. Justice WILDE, also, in *Dodge* v. *The Union Marine Ins. Co.,* <span></span>1858.
17 Mass. R. 475, 476, in referring to the case of *Mumford* v. *The Com. Ins. Co.,* <span></span>——————
says: "No one, I think, can doubt it was correctly decided." <span></span>THE INDIAN-
APOLIS INS.

It is true, cases are distinguished from the ruling in the *Mumford* case, but <span></span>COMPANY
the *Kentucky* Court of Appeals seem not to think it difficult to see any real dis- <span></span>v.
tinction. The ruling is founded on the principle that the insurer guaranties <span></span>MASON.
the safe arrival of the goods, and by that guaranty is bound to contribute to
every expense necessary to insure the safety of the goods, and which is the un-
avoidable consequence of a peril insured against. 1 B. Mon. 341 to 344.

Expenses incurred on the cargo, or any part of it, in direct consequence of
a peril insured against, and all losses, charges, and expenses necessarily incur-
red about the property saved, from the time of disaster to the time when the
property reaches the port of destination, ought to be borne by the insurer. 2
Phil. on Ins. § 1469. See, also, Marsh. on Ins. 379; *Searle* v. *Scovell,* 4 Johns.
Ch. 218; *Dodge* v. *The Union Marine Ins. Co.,* 17 Mass. R. 475; *Gazzam* v.
*The Cin. Ins. Co.,* 6 Ohio R. 71.

And even in *England*, where, as Chancellor KENT informs us, the rule is not
settled, "it seems doubtful whether he [the underwriter] may not be chargeable,
under certain circumstances, with the increased freight, which the merchant is
obliged to pay the ship-owner in case of transhipment, when the freight by the
substituted exceeds that of the original ship." 2 Arnold on Ins., ch. 1, § 10,
*790.

It is true that no man would claim that an insurance of a store covered the
goods contained in it, nor that an insurance upon the goods would cover the
store-house; yet we apprehend no man would doubt that in case the goods
covered by insurance were damaged, by reason of the burning of the store, that
the underwriter would be liable for the loss of the goods, even if the store-house
was not insured. '

So in the case at bar, the damage to the cargo was the consequence of the
sinking of the boat; and the *Masons* made no claim for the injury done to the
boat. Their claim is for the injury to the cargo, growing out of the sinking
of the boat, and the necessary charges and expenses connected with the disas-
ter, and the increased expense of getting the balance of the cargo to market.

But, say the appellants, the hay would have brought 20 dollars per ton at
the place of disaster, more than it was insured for, and had it been sold at that
place, there would have been no 20 per cent. loss for the underwriters to pay.
The hay, then, was carried on for the benefit of the owners, not for the insurers,
and to get it to a better market; and as the owners got the benefit of the car-
riage, the insurance companies should not pay for it.

The hay was insured from *Lawrenceburgh* to *New Orleans;* and the reason
why the owners paid the companies the premium was, because they wished to
transport the hay to *New Orleans* with the expectation of a better market; and
they had a right to insist that it should be taken there, if not so damaged that
it could not be got there.

Suppose the hay had been worth 20 dollars per ton when put in the boat at
*Lawrenceburgh,* could not the same argument be used? Or, suppose that the
hay would have brought 20 dollars per ton at some point above the place of
disaster, could the insurers say, in case of loss, "We are not liable, the hay
could have been sold at 20 dollars per ton before the disaster, and that is more

Nov. Term,
1858.

The Indian-
apolis Ins.
Company
v.
Mason.

than our insurance upon it." Would not the argument in one case be just as sound as in the other?

There is no authority from the insurers to sell the hay at the place of disaster; and the owner had no discretion in the matter, but was obliged, by the terms of the policy, to forward the hay to the point of destination. And even had there been no such clause in the policy, it would have been the duty of the master of the boat, under the circumstances, to tranship the hay to the point of destination. 1 Arnold on Ins. *187, *195.—*Bryant* v. *The Com. Ins. Co.*, 13 Pick. 543.—*Scull* v. *Briddle*, 2 Wash. C. C. 151.—*Hall* v. *Franklin Ins. Co.*, 9 Pick. 478.—*The American Ins. Co.* v. *Center*, 4 Wend. 52.—*Jordan* v. *Warren Ins. Co.*, 1 Story C. C. 342.

Can the expenses and charges incident to a loss, or the extra freight on transhipment of the hay, be added to the damage done to the hay, to make up the loss to 20 per cent. to enable the *Masons* to recover under the policy, which provides that the insurers shall not be liable, except in cases of general average, for any loss on hay, unless it amount to 20 per cent. on the aggregate value of such property?

The appellants having before called upon the Court to release them altogether from the charge for extra freight, now desire the Court to place such a construction upon the policy as will enable them to get rid of the balance. In other words, the insurance companies desire the Court so to construe the policies of insurance issued by them, that the same, instead of covering all the loss and damage sustained by the insured, as has generally been supposed they were intended to do, they shall only cover a fractional part of the same—a proposition that certainly does not recommend itself to the Court, very strongly on account of its equity.

It will not do to take it for granted that, because the freight and expenses may be separately the subject of insurance, they cannot be recovered in the cases before the Court. These cases, certainly, are widely different in principle from the supposed cases of the appellants. In the case of *Schultz* v. *The Ohio Ins. Co.*, before cited, so far from the Court there deciding that the expenses and incidental charges could not be added to the damage on the goods to make up the percentage, the Court do not decide that point at all, though it is evident, from the reasoning of the Court, that had a decision of that point been necessary, it would have been decided that such charges could be added to the loss of the goods to make up the necessary per cent. to bring the loss within the policy. 1 B. Mon. 338.

In the case of the *Fireman's Ins. Co.* v. *Fitzhugh*, 4 B. Mon. 160, the question as to how far expenses incurred in case of damage to a boat insured could be properly chargeable to the underwriters, was discussed somewhat at length, and the Court held (p. 173) that under the circumstances in that case, the expenses incidental to the main loss must be regarded as a part of the loss within the policy, and that the insurers were liable for them on the same principle on which they were liable for any other loss; and the incidental expenses in that case were held to be properly added to the main loss to make up the percentage necessary to enable the insured to recover. 4 *id.* 176.

But by the policy itself, it would seem that it was contemplated that the charges and expenses should be considered a part of the loss. The last sentence in the paragraph in the policy, defining the percentage of loss to make the company liable, and in relation to such percentage, concludes with the

words, "exclusive of all charges and expenses incurred for the purpose of ascertaining and proving the loss." From this language, it would certainly be inferred that all other charges and expenses incurred should be added to make up the 20 per cent., except those incurred in ascertaining and proving the loss, upon the principle of the maxim, *expressio unius est exclusio alterius*, and had it been the intention of the company to have excluded from the estimate of the loss to make up the per cent., the expenses and charges incurred in saving and transhipping the goods, as well as those incurred in ascertaining and proving the loss, it is very reasonable to conclude that while framing that section of the policy relating to the same subject, it would have been so expressed.

But a case precisely in point, (*Hall and Lindsay* v. *The Rising Sun Ins. Co.*,) was decided at the *March* term, 1857, of the Superior Court of *Cincinnati*. That was a case founded on a policy, similar, in all respects, to the policy in the case at bar; in fact issued by one of the same appellants. It was also a policy on a cargo of hay, and the flatboat, upon which the same was shipped, grounded, as did the one in the case now before the Court, and the hay was forwarded to the point of destination, at a cost of 5 dollars, 50 cents, per ton. The same points also arose in that case, and were presented by the same able counsel who presents them in the case now before the Court.

Judge SPENCER held, 1. "That the words 'loss or damage' in the memorandum clause of the policy, were not confined to sea or river damage merely, but must be intended to include such loss as was the direct consequence of the perils insured against, and such as would have been covered by the policy, had it contained no exception of loss within 20 per cent.—the exception being intended to limit what would otherwise have been the general liability of the insurer.

2. "That the expense of saving and preserving the property was a loss of this description, and should be added to the damage occasioned the hay, in estimating the amount of such loss; and taking the two together, the whole loss, amounting to more than 20 per cent., was covered by the policy.

, 3. "That the clause requiring the insured to use reasonable and proper means 'or the relief and recovery of the property, to the charges whereof the company engage to contribute, &c., was intended to reimburse the insured, in any event, for expenses thus incurred, whether the sum amounted to 20 per cent. or not; but did not preclude the same expenses from being treated as part of the loss to which the insurer would otherwise be liable, irrespective of such clause.

4. "That in estimating the claim for extra freight, the same principle must be applied, whether plaintiff was his own carrier, or employed another person; and inasmuch as, if the hay had been carried by another person, no freight could have been earned at the time of the disaster, and the cost of transporting the cargo from the place to the port of destination was no greater than it would have been if the disaster had not happened—there was, in fact, no increased freight to be borne by the owner, and, therefore, no loss for which indemnity could be required," &c.

It will be observed that although the Court, in that case, did not allow the claim for extra freight, it was not for the reason that the claim was not a legal one, but because no increased freight had to be borne by the insured; and there was, therefore, no loss for which indemnity could be asked. In this respect the case at bar differs from the case above referred to. In this case the

cost of freight from *Lawrenceburgh* to *New Orleans* was six dollars per ton. The *Masons* paid the steamboat for taking the hay from the place of disaster to the point of destination, ten dollars per ton, making an increase of freight of four dollars per ton, upon the theory of the above cited case, that no freight had been earned by the flat-boatman. That is, deducting the total amount of the flatboat's freight (six dollars per ton) from amount paid the steamboat (ten dollars per ton), leaving four dollars per ton as the extra freight paid.